# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GROVER LEE HUNT, JR.,     ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| vs.     ) | Case No. 11 C 4396 |
| ) | Judge Joan H. Lefkow |
| MARCUS HARDY, RALPH BURKYBILE,     ) | |
| REBECCA HUNTER, LEWIS KOVAC,     ) | |
| I. CARTER, PARTHASARATHI GHOSH,     ) | |
| and SALVADOR GODINEZ,     ) | |
| ) | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Grover Lee Hunt, Jr. brings a 42 U.S.C. § 1983 claim against Illinois Department of Corrections Director Salvador Godinez, Stateville Correctional Center Warden Marcus Hardy, Lieutenant Ralph Burkybile, Sergeant Rebecca Hunter, Sergeant Lewis Kovac, and the current and former Medical Directors for Stateville, Drs. I. Carter and Parthasarathi Ghosh.  Hunt's claim arises from defendants' alleged failure to provide him with proper medical care during his incarceration at Stateville.  Before the court is Godinez, Hardy, Burkybile, Hunter, and Kovac's motion to dismiss Hunt's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the motion [#38] will be granted in part and denied in part.[1]

---

[1] Subject matter jurisdiction is provided by 28 U.S.C. §§ 1331 and 1343(a)(3).  Venue is proper under 28 U.S.C. § 1391(b) because the events that gave rise to Hunt's claims occurred in this district.

# FACTS[2]

Hunt is an inmate at Stateville and is approximately forty-nine years old. In September 2008, Hunt sustained a back injury while exercising at Stateville. Though virtually unable to move, and despite repeated requests, he was not allowed to see a doctor for three days.

In January 2009, Hunt was referred to an outside specialist at the University of Illinois Medical Center (the "University"), who diagnosed him with a severely herniated disc in the lumbar region of his spine. In February 2009, the specialist prescribed Vicodin and ordered Hunt to return for further testing and treatment. Stateville's Medical Director refused to dispense the Vicodin. Between April and July 2009, Hunt had three appointments at the University His doctors at the University determined that the treatment Hunt had received was not alleviating his severe pain.

In December 2009, a University physician ordered an MRI and recommended surgery on Hunt's herniated disk. The MRI occurred in February 2010. Despite the doctor's recommendation that Hunt undergo surgery, Stateville's Medical Director did not allow Hunt to return to the University until September 2010. Instead, the Director ordered that Hunt be assigned to sleep in a low bunk and low gallery, or floor, so that he would not have to climb into a top bunk or up stairs. The Director also prescribed that Hunt use a crutch while walking.

---

[2] The following facts are taken from the amended complaint and are presumed true for the purpose of resolving the pending motion. The court has included the allegations relating to Hunt's claims against Drs. Ghosh and Carter, who have not filed a motion to dismiss, only to the extent necessary to provide context. The complaint alleges that Dr. Carter is the current Medical Director for Stateville and that Dr. Ghosh was the Medical Director until Dr. Carter's appointment. It does not make clear whether the events at issue occurred during Dr. Carter's or Dr. Ghosh's tenure. The court therefore refers to "the Medical Director" instead of referring to Drs. Carter or Ghosh by name.

Burkybile, Hunter, and Kovac prevented Hunt from receiving this prescribed treatment. Burkybile, who oversaw Hunt's housing unit, ordered his subordinates to take Hunt's crutch away. Hunter and Kovac were the unit sergeants for Hunt's housing unit. They were responsible for carrying out the order that Hunt be assigned to a low bunk on a low gallery so that he would not have to climb up and down. Hunter and Kovac refused to reassign Hunt to a low bunk or a low gallery and instead required him to sleep in a top bunk on an upper-level gallery. Hunt had to climb multiple flights of stairs to access the upper-level gallery. In order to get into bed, Hunt had to first climb onto a sink and then hoist himself to the upper bunk. To get out of bed from a top bunk, Hunt had to jump down or climb to the sink and to the floor. The pain associated with Hunt's severely herniated disc made climbing onto a top bunk extremely difficult. Hunt made multiple requests to be assigned to a low bunk and a low gallery, which Hunter and Kovac ignored.

In September 2010, Hunt fell while attempting to climb down from his bed. He hit the ground and lost consciousness. After this fall, Hunt was given a low bunk and low gallery assignment. He has since been returned to the third level of galleries (out of four levels). No medical evaluation was performed to determine whether Hunt's condition warranted this change. He was returned to the upper gallery because his low bunk "permit" expired.

On September 20, 2010, University doctors determined that Hunt's herniated disc had degenerated and required surgery and indicated that Hunt should return as soon as possible for the surgery. Hunt received no additional treatment until February 18, 2011, when he was taken back to the University. A new doctor recommended a six-month physical therapy regimen prior to any surgery. As of the filing of this suit in September 2011, Hunt had not received any

additional diagnostic tests, physical therapy, or a follow-up appointment at the University. As a result, Hunt has been suffering from an untreated severely herniated disc and his pain continues unabated.

Hunt filed multiple grievances regarding the denial of medical treatment. Hardy ignored the grievances. Hunt spoke with Hardy regarding a grievance that he had filed as a result of the removal of his crutch. Hardy indicated that he had approved Burkybile's decision to take the crutch away.

There is a widespread custom among Godinez, Hardy, Burkybile, Hunter, Kovac, Drs. Carter and Ghosh, and Illinois Department of Corrections ("IDOC") employees of ignoring inmates' serious medical conditions and ignoring inmate grievances that relate to the failure to receive medical treatment. Hardy and Godinez were aware of this custom and ignored it. Hardy is responsible for supervising Burkybile, Hunter, Kovac, and Drs. Carter and Ghosh. Godinez is responsible for supervising all of the other defendants.

Hardy, Burkybile, Hunter, and Kovac are sued in their individual and official capacities. Godinez is sued only in his official capacity.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences in the plaintiff's favor. *Nixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a 12(b)(6) motion, the complaint must not only provide the defendant with fair

notice of the claim's basis but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

**I.       Official Capacity Claims for Damages**

Godinez, Hardy, Burkybile, Hunter, and Kovac argue that, to the extent they are sued in their official capacities, Hunt's claims for damages are barred by the Eleventh Amendment. A suit brought against a state officer in his official capacity is treated a suit against the state for which that officer works. *Will* v. *Mich. Dep't of State*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); *Kentucky* v. *Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). In a section 1983 action against a state or a state officer, "a federal court's remedial power, consistent with the Eleventh Amendment is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Owen* v. *Lash*, 682 F.2d 648, 654 (7th Cir. 1982) (quoting *Edelman* v. *Jordan*, 415 U.S. 651, 677, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1973) (internal citations omitted)). Thus, the Eleventh Amendment bars official capacity claims for money damages. *See, e.g.*, *Joseph* v. *Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005); *Graham*, 473 U.S. at 168-69. The Eleventh Amendment does not, however, bar an official capacity suit seeking prospective injunctive or declaratory relief against a state official. *See, e.g.*, *Verizon Md. Inc.* v.

*Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644-45, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) (citing *Ex Parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908)); *Brunken* v. *Lance*, 807 F.2d 1325, 1329 (7th Cir. 1986).[3]

Hunt seeks only money damages from Burkybile, Hunter, and Kovac, and therefore his official capacity claims against them will be dismissed with prejudice. With respect to Godinez and Hardy, Hunt seeks money damages as well as an order directing IDOC to arrange an outside physician to conduct a medical examination and to make the recommended treatment available to him. To the extent Hunt seeks damages from Hardy and Godinez based on official capacity claims, those claims will be dismissed with prejudice. Hunt's request for prospective injunctive relief from Hardy and Godinez is not barred by the Eleventh Amendment, and that portion of his suit may proceed. *See Ford* v. *Lane*, 714 F. Supp. 310, 314 (N.D. Ill. 1989) (request for order that prison officials provide plaintiff with medical examination by a specialist was not barred by the Eleventh Amendment).

## II. Individual Capacity Claims against Hardy, Burkybile, Hunter, and Kovac

Hardy, Burkybile, Hunter, and Kovac argue that Hunt's claims must be dismissed because Hunt has not alleged that they were personally involved in the violation of his constitutional rights. In order to succeed in an individual capacity claim against a state actor under section 1983, a plaintiff must show that the defendant was personally involved in the alleged constitutional deprivation. *Palmer* v. *Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003); *Duncan* v. *Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). Agency principles of *respondeat*

---

[3] Hunt argues that his claims for damages are not barred because defendants are entitled only to qualified, rather than absolute, immunity. It is well-established that the qualified immunity doctrine does not apply to official capacity claims. *See Sanville* v. *McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001) (citing *Ruffino* v. *Sheahan*, 218 F.3d 697, 700 (7th Cir. 2000)). Hunt's argument is without merit.

*superior* and vicarious liability do not apply to section 1983 claims. *Kinslow* v. *Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each government official defendant, through the official's own individual actions, has violated the Constitution."). Therefore supervisors are held individually liable for violating the constitution only where they "kn[ew] about the unconstitutional conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see." *T.E.* v. *Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones* v. *City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)); *see also Crowder* v. *Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) ("An official satisfies the personal responsibility requirement of section 1983 if she fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.").

Hunt has alleged facts sufficient to support the inference that Burkybile, Hunter and Kovac were personally involved in denying him necessary medical care. While it is true, as defendants emphasize, that non-medical prison officials are entitled to defer to a prison doctor's medical treatment of a prisoner, *Berry* v. *Peterman*, 604 F.3d 435, 440 (7th Cir. 2010), prison officials may not "substitute their judgments for a medical professional's prescription." *Zentmyer* v. *Kendall Cnty., Ill.*, 220 F.3d 805, 812 (7th Cir. 2000). "If a defendant consciously chose to disregard a nurse or doctor's directions in the face of medical risks, then he may well have exhibited the necessary deliberate indifference." *Id.*; *accord Chapman* v. *Keltner*, 241 F.3d 842, 846 (7th Cir. 2001) ("If the officers were aware that Chapman was prohibited from climbing all stairs, disregarded this and required her to step into the van, then perhaps the officers' conduct would constitute deliberate indifference."); *see also Wynn* v. *Southward*, 251

F.3d 588, 593-94 (7th Cir. 2001) (complaint successfully alleged deliberate indifference where non-medical prison officials refused to provide dentures and prescribed heart medication to prisoner, even though he had filed numerous grievances requesting these items and describing his deteriorating physical condition). Hunt alleges that Burkybile ordered that his crutch, which had been prescribed by Stateville's Medical Director, be taken away from him. He further alleges that Hunter and Kovac refused carry out the Director's order that Hunt be assigned to a low bunk or a low gallery. Hunt repeatedly requested that Hunter and Kovac assign him to a low bunk and low gallery, but these requests were ignored until after his fall. Based on the nature of Hunt's medical condition, which was easily detected because it restricted his movement, it is plausible to infer that Burkybile, Hunter, and Kovac knew that their refusal to follow the Director's orders created a medical risk. Indeed, because of Hunter and Kovac's refusal to comply with the order, Hunt was forced to climb up and down multiple flights of stairs and engage in difficult maneuvers to access his top bunk. In September 2010, Hunt fell while he was attempting to climb from his bed to the sink, hit the ground, and lost consciousness. Hunt's herniated disc continued to degenerate, possibly requiring surgery. Nevertheless, he has not been returned to a low bunk or a low gallery. Taken together, these facts support the inference that Burkybile, Hunter and Kovac knew of Hunt's medical condition and that they were personally involved in the deprivation of necessary medical treatment. *See Burks* v. *Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Plaintiffs need not lard their complaints with facts; the federal system uses notice pleading rather than fact pleading. Knowledge and intent, in particular, need not be covered in detail . . . . It is enough to lay out a plausible grievance.").

Hunt has also alleged facts sufficient to give rise to the inference that Hardy, the warden at Stateville, was personally involved in the violation of his constitutional rights. Hunt alleges that he spoke to Hardy regarding a grievance that he filed as a result of the removal of his crutch. During their conversation, Hardy indicated that he had approved Lieutenant Burkybile's decision to take away the crutch. In addition, Hunt alleges that Hardy had personal knowledge of the facts that give rise to his claims. Drawing all inferences in favor of Hunt, it is plausible that Hardy knew about Hunt's medical condition and that taking away the crutch created a medical risk. It is also plausible that the decision to take away Hunt's crutch was made with Hardy's knowledge and consent.

Defendants argue that the court should follow *Crowder*, where the Seventh Circuit upheld a directed verdict in favor of the Commissioner of Corrections of the State of Indiana. The court of appeals concluded that evidence establishing that the Commissioner's subordinates had informed him of the alleged constitutional deprivation (being kept in seclusion for forty-six months) was not sufficient to establish that he was personally involved in the events that gave rise to the plaintiff's damage claims. *See* 687 F.2d at 1005-06. Unlike in *Crawford*, the facts alleged by Hunt give rise to the inference that Hardy was consulted about the alleged constitutional deprivation and that he explicitly approved it. Drawing all inferences in Hunt's favor, the allegations in the complaint suggest that Hardy was more than a "well informed" warden. *Cf. id.* at 1006. By approving Burkybile's decision, Hardy was a participant in the events that gave rise to Hunt's claims and therefore was personally involved in the alleged constitutional deprivation. *See Volk* v. *Coloer*, 845 F.2d 1422, 1432 (7th Cir. 1988) (evidence supported the conclusion that the director of the Department of Children and Family Services

9

was personally involved in the violation of plaintiff's rights because the director was aware of a male employee's sexual harassment of another female employee and had approved his subordinates' decision to deny multiple grievances filed by the female employee). For all of these reasons, Hardy, Burkybile, Hunter, and Kovac's motion to dismiss Hunt's individual capacity claims will be denied.

**III.     Official Capacity Claims against Godinez and Hardy**

Godinez and Hardy also argue that Hunt's claims against them must be dismissed because his allegation that there was a widespread custom of ignoring inmates' serious medical conditions and grievances fails to allege personal involvement. In making this argument, Godinez and Hardy overlook the distinction between individual capacity and official capacity claims. Godinez is sued solely in his official capacity, and Hardy is sued in his official as well as his individual capacity. With respect to Hunt's official capacity claims, the issue is not whether Hunt has alleged facts giving rise to "personal involvement," but rather whether he has stated a claim under *Monell* v. *Department of Social Services of New York City*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). *See Hafer* v. *Melo*, 502 U.S. 21, 25-27, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (discussing the difference between individual capacity and official capacity claims and noting that when officials sued in their official capacities leave office, their successors automatically assume their roles in the litigation).

Hunt's official capacity claims against Godinez and Hardy are treated as suits against IDOC itself. *See, e.g.*, *Walker* v. *Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). A municipality or local government entity cannot, however, be held vicariously liable for the actions of its employees. *See, e.g.*, *Montano* v. *City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008). An

official capacity claim may only be based on (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well settled as to constitute a custom or usage with the force of law, even though no express municipal policy or law authorized the practice; or (3) a constitutional injury that was caused by an official with final policymaking authority. *McCormick* v. *City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Additionally, a plaintiff must sufficiently allege that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of the Cnty. Comm'rs* v. *Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

Hunt is not held to a heightened standard in pleading a *Monell* claim. *See McCormick*, 230 F.3d at 323 (citing *Leatherman* v. *Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). Even after *Twombly* and *Iqbal*, other courts in this district have continued to apply *Leatherman's* holding that plaintiffs are not required to plead specific facts to prove the existence of a municipal policy. *See Riley* v. *Cnty. of Cook*, No. 09 C 2267, 2010 WL 376064, at *4 (N.D. Ill. Jan. 27, 2010); *Jones* v. *Bremen High Sch. Dist.*, No. 08 C 3548, 2009 WL 537073, at *4 (N.D. Ill. Mar. 4, 2009). "[A]n official capacity claim can survive even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Riley*, 2010 WL 376064, at *4 (citing *McCormick*, 230 F.3d at 325).

Hunt's allegations regarding a widespread custom are specific enough to alert Hardy and Godinez to the policy he alleges infringes on his constitutional right. Hunt alleges that he was denied medical treatment and necessary accommodations for a serious medical condition. He further alleges that he filed multiple grievances, which were ignored. Hunt alleges that his

11

experience was the result of a widespread custom among Hardy, Godinez, and IDOC employees of ignoring inmates' serious medical conditions and related grievances. Hunt further alleges that Hardy was aware of this custom and that Hardy ignored multiple grievances filed by Hunt. These allegations are specific enough to state a *Monell* claim that is plausible on its face. Hardy and Godinez's motion to dismiss the official capacity claims against them will be denied.

## CONCLUSION AND ORDER

Godinez, Hardy, Burkybile, Hunter, and Kovac's motion to dismiss [#38] is granted in part and denied in part. Hunt's official capacity claims against Burkybile, Hunter, and Kovac are dismissed with prejudice. Hunt's claim for damages against Godinez is dismissed with prejudice. To the extent Hunt brings an official capacity claim for damages against Hardy, the claim is dismissed with prejudice. Godinez, Hardy, Burkybile, Hunter and Kovac have fourteen days to answer the complaint.

Dated: June 27, 2012                    Enter: _____
                                        JOAN HUMPHREY LEFKOW
                                        United States District Judge